UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

McRAY BENNETT,

          Plaintiff,

   vs.

M. BENNETT, et al.,

         Defendants.

Case No:  C 10-03775 SBA (PR)

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS AND MOTION FOR SUMMARY JUDGMENT; REFERRING MATTER FOR SETTLEMENT PROCEEDINGS; AND SETTING NEW BRIEFING SCHEDULE**

Docket 49

## **INTRODUCTION**

This is a pro se prisoner civil rights action under 42 U.S.C. § 1983 brought by McRay Bennett, a state prisoner currently incarcerated at Kern Valley State Prison. Plaintiff alleges a claim for excessive force as a result of being sprayed with pepper spray by correctional officers during an altercation with another prisoner.  He also alleges a due process claim as a result of being placed in administrative segregation following a disciplinary proceeding arising from that altercation.  These incidents occurred while Plaintiff was incarcerated at Salinas Valley State Prison ("SVSP").

The parties are presently before the Court on Defendants' Renewed Motion to Dismiss Under Federal Rule of Civil Procedure 12(b), and Renewed Motion For Summary Judgment Under Federal Rule of Civil Procedure 56.  Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby GRANTS IN PART and DENIES IN PART the motion for the reasons set forth below.

**BACKGROUND**

**I.      FACTUAL SUMMARY**

Plaintiff alleges that his constitutional rights were violated while he was incarcerated at SVSP in 2007.  Plaintiff alleges an Eighth Amendment excessive force claim against Correctional Officers (C/O) Button and Gonzalez, and a violation of his Fourteenth Amendment right to procedural due process against Defendants C/O Button; C/O Gonzalez; C/O Vega; Sgt. Deathriage; Lt. Showalter; Lt. Kessler; and Nurse Ivey.

This action stems from an incident which occurred on October 21, 2007.  At that time, Plaintiff was using clippers to cut an inmate's hair, when another inmate, Lester Green, attacked him for no apparent reason.  In response, Button and Gonzalez sprayed Plaintiff with pepper spray.  Plaintiff alleges that he was "out of striking distance and non-combative," and therefore, there was no reason to spray him.  (Compl., "Cause of Action--Intentional Tort" at 4, 7.)  Plaintiff further avers that inmate Green was not targeted by Defendants, and that Plaintiff "was the only one directly inflicted with the pepper spray to his face and upper torso."  (Id.)  Plaintiff avers that he was not decontaminated after being pepper sprayed and that he ultimately sustained injuries as a result of this incident.  Plaintiff accuses Button and Gonzalez of using excessive force.

Plaintiff was subsequently found guilty of the offense of mutual combat and placed in administrative segregation.  He argues his due process rights were violated because no evidentiary basis existed for that decision.  Plaintiff alleges that Defendants Button, Gonzalez, Vega, Deathriage, Showalter, Kessler and Ivey were responsible for his due process violation insofar as they participated in the decisions to place him in administrative segregation.

**II.      PROCEDURAL HISTORY**

Plaintiff filed his initial complaint on August 25, 2010, against Button, Gonzalez, Vega, Deathriage, Showalter, Kessler and Ivey.  Upon review of the complaint, the Court construed the pleadings as alleging an Eighth Amendment excessive force claim and a due process claim.

On September 20, 2011, all Defendants (except Ivey, who has not been served) answered the complaint. Among other things, they denied using excessive force, that they were deliberately indifferent to his medical needs or that they violated his due process rights. (Answer at 3-5.)

On November 4, 2011, the aforementioned Defendants filed a motion to dismiss and for summary judgment. Subsequently, the Ninth Circuit Court of Appeals held that pro se prisoner-plaintiffs must be provided with "notice of what is required of them in order to oppose" summary judgment motions and motions to dismiss for failure to exhaust administrative remedies at the time of filing of the motions. See Woods v. Carey, 684 F.3d 934, 935, 940-41 (9th Cir. 2012). Because the Ninth Circuit decided Woods after Defendants filed their dispositive motion, the Court denied their motion without prejudice, with directions to re-file such motion with the appropriate notice to Plaintiff.

Defendants have renewed their motion to dismiss and for summary judgment. Specifically, Defendants bring an unenumerated motion under Rule 12(b) for failure to exhaust administrative remedies under the Prison Litigation Reform Act of 1995 ("PLRA"). Alternatively, Defendants move for summary judgment on the following grounds: (1) Plaintiff's excessive force claim is barred by Heck v. Humphrey, 512 U.S. 477 (1994); (2) there was no excessive force as a matter of law; and (3) Defendants are entitled to qualified immunity. Plaintiff opposes Defendants' motion. The matter is fully briefed and is ripe for adjudication.[1]

---

[1] Although Defendants' Answer expressly denies that Defendants were deliberately indifferent to Plaintiff's serious medical needs, their motion does not address such claim. However, this omission may be attributable to the Court's inadvertent omission of the claim from its Order of Service. As will be set forth below, the Court is referring this matter for a mandatory settlement conference through the Court's Pro Se Prisoner Settlement Program. In the event the case does not settle, the remaining deliberate indifference claim will be addressed initially through motion practice.

1

## DISCUSSION

2

## III.   MOTION TO DISMISS FOR FAILURE TO EXHAUST

3

### A.   LEGAL STANDARD

4

A motion to dismiss based on a prisoner's failure to exhaust administrative remedies

5 is properly brought as an unenumerated Rule 12(b) motion.  Wyatt v. Terhune, 315 F.3d

6 1108, 1119 (9th Cir. 2003).  "In deciding a motion to dismiss for failure to exhaust non-

7 judicial remedies, the court may look beyond the pleadings and decide disputed issues of

8 fact."  Id. at 1119-20.  Where the court looks beyond the pleadings to a factual record in

9 deciding the motion to dismiss, which is "a procedure closely analogous to summary

10 judgment," the court must assure that the plaintiff has fair notice of his opportunity to

11 develop a record.  Id. at 1120 n.14.  Nonexhaustion is an affirmative defense which must be

12 raised and proved by the defendants.  Id. at 1119.  If the court concludes administrative

13 remedies have not been exhausted, the unexhausted claim should be dismissed without

14 prejudice.  Id. at 1120.

15

### B.   EXHAUSTION UNDER THE PLRA

16

The PLRA provides that "[n]o action shall be brought with respect to prison

17 conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in

18 any jail, prison, or other correctional facility until such administrative remedies as are

19 available are exhausted."  42 U.S.C.1997e(a).  The purposes of the PLRA's exhaustion

20 requirement are to: (1) "eliminate unwarranted federal court interference with the

21 administration of prisons;" (2) "afford corrections officials time and opportunity to address

22 complaints internally before allowing the initiation of a federal case;" and, (3) "reduce the

23 quantity and improve the quality of prisoner suits."  Woodford v. Ngo, 548 U.S. 81, 84-85,

24 (2006).

25

The PLRA requires the inmate to exhaust every level in the administrative process.

26 See McKinney v. Carey, 311 F.3d 1198, 1200 (9th Cir. 2002).  Exhaustion is a prerequisite

27 to the inmate filing a lawsuit.  See Porter v. Nussle, 534 U.S. 516, 524 (2002).  The failure

28 to exhaust is an affirmative defense which defendants bear the burden of establishing.

Albino v. Baca, 697 F.3d 1023, 1031 (9th Cir. 2012).  "Once the defense meets its burden, the burden shifts to the plaintiff to show that the administrative remedies were unavailable." Id.  Administrative remedies may be deemed "unavailable" where the inmate takes reasonable steps to exhaust but is precluded from exhausting such claim due to a mistake by prison staff.  Id.

The exhaustion requirement requires "proper exhaustion" of all available administrative remedies.  Woodford, 548 U.S. at 93.  In California, the State provides its prisoners and parolees the right to appeal administratively "any departmental decision, action, condition or policy perceived by those individuals as adversely affecting their welfare."  Cal. Code Regs. tit. 15, § 3084.1(a).  In order to exhaust available administrative remedies within this system, a prisoner must proceed through several levels of appeal: (1) informal review, (2) first formal written appeal on a CDC 602 inmate appeal form, (3) second formal level appeal to the institution head or designee, and (4) third formal level appeal to the Director of the California Department of Corrections and Rehabilitation ("Director").  See Barry v. Ratelle, 985 F. Supp 1235, 1237 (S.D. Cal. 1997) (citing Cal. Code Regs. tit. 15, § 3084.5).  A final decision from the Director's level of review satisfies the exhaustion requirement under § 1997e(a).  See id. at 1237-38.

For a remedy to be "available," there must be the "possibility of some relief . . . ." Booth, 532 U.S. at 738.  Relying on Booth, the Ninth Circuit has held: "[A] prisoner need not press on to exhaust further levels of review once he has received all 'available' remedies at an intermediate level of review or been reliably informed by an administrator that no remedies are available."  Brown v. Yaloff, 422 F.3d 926, 935 (9th Cir. 2005).

### C.   ANALYSIS

#### 1.   Excessive Force Claim

Plaintiff argues he exhausted his administrative remedies concerning his excessive force claim by submitting his 602 appeal on October 24, 2007, requesting "an investigation and monetary compensation" in connection with the October 21, 2007 incident.  (Opp'n at 7; Ex. AF.)  Plaintiff asserts that he received an informal appeal decision granting the

appeal, and that no further administrative remedy remained available to him.  As support, Plaintiff submits the original October 24, 2007 602 appeal form, which includes a November 4, 2007, response at the informal level, in red ink from a sergeant with an undecipherable signature.  (Opp'n; Ex. AF.)

In their renewed motion to dismiss, Defendants argue that Plaintiff "does not provide the log number of the appeal, which he claims exhausted his administrative remedies."  (Renewed Mot. to Dismiss at 5.)  In addition, they claim that Plaintiff's central file does not contain any record of such an appeal and that the appeal is not reflected in the Inmate Appeals Tracking System ("IATS") at SVSP.  (Id. at 7.)  Defendants claim that "[e]very appeal received by the office of the appeals coordinator is logged in the IATS system of the institution at which the appeal is submitted."  (Id.)  Defendants assert that the October 24, 2007 602 appeal is "not reflected in the IATS log for the plaintiff."  (Id.)  Therefore, Defendants assert that Plaintiff "fabricated a false response to an appeal."  (Id.)  Alternatively, Defendants argue that Plaintiff "admits he did not pursue the appeal through the Director[']s Level of review as required under the PLRA."  (Id. at 5.)  Consequently, Defendants argue, Plaintiff's excessive force claim is unexhausted.

Defendants afforded Plaintiff fair notice of his opportunity to develop a record in order to oppose dismissal, and Plaintiff has presented the Court with the original 602 appeal relating to the excessive force claim.  (Opp'n, Ex. AF.)  While Defendants argue that no such 602 appeal can be found in Plaintiff's central file, they do not attach any documentary record to support their contention.  Specifically, the Court notes that Defendants have not submitted a copy of the IATS log for Plaintiff in support of their assertion that the October 24, 2007 602 appeal is not reflected in that log.  In addition, Defendants have failed to submit a declaration from the appeal's coordinator at the prison indicating that no such appeal was filed by Plaintiff.  Because the burden lies with Defendants to demonstrate that Plaintiff failed to exhaust, the Court finds insufficient evidence to support Defendants' contention that Plaintiff falsified the 602 appeal at issue.  Thus, the Court will presume that the informal response November 4, 2007, 602 appeal was not falsified by Plaintiff, and that

1  Plaintiff was granted relief at the informal level of review.

2          Moreover, in his October 24, 2007 602 appeal, Plaintiff included sufficient facts to

3  alert the prison officials at SVSP to the alleged excessive force claim stemming from the

4  incident on October 21, 2007.  See Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009)

5  (noting that a grievance should include sufficient information "to allow prison officials to

6  take appropriate responsive measures.").  Plaintiff requested that the "unit officers be

7  interviewed/investigated about their conflicting reports," that he "be properly treated if skin

8  irritation persists from 'over exposure' to pepper spray," and that he "be compensated for

9  future and current affliction as a result of and for illegal use of force."  (Opp'n, Ex. AF.)

10  On November 4, 2007, the reviewer "granted" Plaintiff's appeal at the informal level,

11  stating:

12              Interviewed each officer in FA-5 who confirms:  1. Their
           reports as written.  You were not decontaminated by shower.
           You were adequately treated by Ad-Seg medical for your
13           condition.  This concludes my investigation, however you were
           also granted another investigator (I.E.) prior ro you[r] 115
14           hearing per 3318 (a).  You cannot be granted monetary
           compensation through the CDC-Appeals System per 3084.3(c).

15

16  (Id.)

17          "An inmate has no obligation to appeal from a grant of relief, or a partial grant that

18  satisfies him, in order to exhaust his administrative remedies."  Harvey v. Jordan, 605 F.3d

19  681, 685 (9th Cir. 2010).  In Harvey, the prisoner filed a grievance, requesting a timely

20  hearing on his disciplinary charge, and he received a decision granting him relief.  See id. at

21  684-85.  Five months later, having still received no hearing, the prisoner filed an appeal at

22  the second level of review, which was rejected as untimely.  See id. at 685.  The Ninth

23  Circuit concluded that the prisoner had indeed exhausted his claim, reasoning that, "[o]nce

24  the prison officials purported to grant relief with which he was satisfied, his exhaustion

25  obligation ended.  His complaint had been resolved, or so he was led to believe, and he was

26  not required to appeal the favorable decision."  Id.  The Court also explained, "Nor is it the

27  prisoner's responsibility to ensure that prison officials actually provide the relief that they

28  have promised."  Id.; see Abney v. McGinnis, 380 F.3d 663, 669 (2d Cir. 2004) ("A

1  prisoner who has not received promised relief is not required to file a new grievance where

2  doing so may result in a never-ending cycle of exhaustion.").

3      Here, Plaintiff received partial relief, as he was informed that the reviewer

4  interviewed the officers about their reports.  While the reviewer indicated that Plaintiff's

5  appeal was "granted," he added that monetary compensation could not be awarded.

6  Relying on Harvey, Plaintiff contends that "based on this 'satisfactory response,' [his]

7  remedy is exhausted."  (Opp'n at 7.)  The Court agrees.  In view of Harvey, Plaintiff was

8  not required to appeal from the grant of relief that he received in order to exhaust his

9  administrative remedies.  605 F.3d at 685.

10     In sum, the Court finds that Defendants have failed to carry their burden of

11  demonstrating that Plaintiff failed to exhaust his administrative remedies in connection with

12  his excessive force claim.  Thus, the motion to dismiss is therefore DENIED as to this

13  claim.

14         **2.    Due Process Claim**

15     Defendants next assert that Plaintiff failed to exhaust his administrative remedies

16  with respect to his due process claim because he did not submit a 602 appeal relating to his

17  placement in administrative segregation after the October 21, 2007 incident.  Defendants

18  argue that Plaintiff "failed to even initiate the inmate appeals system," and that he did not

19  "exhaust it through [the] Director's Level review."  (Renewed Mot. to Dismiss at 7.)

20     Plaintiff counters that on November 21, 2007, he "obtained copies and submitted an

21  appeal relative to the 'guilty' finding of Lt. Kessler to the RVR for 'mutual combat.'"

22  (Opp'n at 7.)  As noted, Plaintiff has attached his 602 appeal from November 21, 2007, in

23  which he attempted to include sufficient facts to alert the prison officials at SVSP to the

24  alleged due process violation stemming from his disciplinary hearing on October 30, 2007.

25  See Griffin, 557 F.3d at 1120.  However, unlike his 602 appeal from October 24, 2007, his

26  November 21, 2007 602 appeal form does not include any staff responses, even at the

27  informal level.  (Opp'n, Ex. J.)  Plaintiff claims he was "never issued a log number by the

28  Appeals Office . . . ."  (Opp'n at 7.)  He adds that this "usually means the appeal went to the

1  appropriate staff for 'Informal level' response prior to receiving a log number by the

2  appeals office."  (Id.)  Furthermore, Plaintiff claims that "[o]bviously time limits restricted

3  [him] from resubmitting this appeal, therefore remedies were exhausted."  (Id.)

4      Plaintiff acknowledges that California has established procedures for filing

5  grievances in each of its correctional facilities.  However, Plaintiff has given an incomplete

6  description of these procedures as listed in Title 15 of the California Code of Regulations

7  § 3084.  First, under Title 15 of the California Code of Regulations § 3084.6(c), inmates are

8  required to submit their 602 appeals within fifteen working days of the event or decision

9  being appealed.  Cal. Code. Regs., tit. 15 § 3084.6(c).  And as explained above, under Title

10 15 of the California Code of Regulations § 3084.1(a), in order to exhaust available

11 administrative remedies within this system, a prisoner must proceed through multiple levels

12 of appeal.  Cal. Code. Regs., tit. 15 § 3084.1.  Plaintiff contends that his 602 appeal is first

13 considered at the "informal" review; however, he neglects to mention the other three formal

14 levels of review.  See id.  Based on the record before the Court, it does not appear that

15 Plaintiff has sufficiently complied with the appropriate procedures, as he apparently did not

16 file the grievance even at the informal level because no response is indicated on his

17 November 21, 2007 602 appeal form.

18      In his opposition, Plaintiff appears to claim that he was "restricted" from "re-

19 submitting" his appeal; however, Plaintiff does not support this argument with any

20 documentary evidence from the prison indicating that his appeal was rejected as untimely.

21 Assuming Plaintiff's allegations are true, the Court has explained above that in California

22 state prisons, the deadline for filing an administrative grievance is fifteen working days

23 from the date the administrative decision or action being complained of is taken.  See Cal.

24 Code Regs., tit. 15 § 3084.6(c).  Here, the disciplinary hearing Plaintiff is challenging took

25 place on October 30, 2007.  The relevant 602 appeal is dated November 21, 2007, which is

26 more than fifteen working days after the hearing date.  Although Plaintiff claims that his

27 remedies were exhausted when "time limits" restricted him from submitting his appeal, the

28 Court finds that his due process claim was unexhausted because the 602 appeal at issue was

filed after the fifteen-day deadline.  See Ngo v. Woodford, 539 F.3d 1108, 1110 (9th Cir. 2008) ("Ngo II") (finding claims unexhausted where filed more than fifteen working days after date of decision, i.e., after deadline in Cal. Code Regs. tit. 15, § 3084.6(c) had passed).

In addition, Plaintiff fails to allege sufficient reasons to explain why he lacked the opportunity to file his grievance during the fifteen-day filing period.  As such, he fails to meet the requirements to fall under any exception to the timely filing requirement.  Cf. Marella v. Terhune, 568 F.3d 1024, 1027 (9th Cir. 2009) (remanding for district court to consider whether plaintiff had the opportunity to file a grievance within fifteen days after assault where his injuries and subsequent segregation rendered grievance form inaccessible).  Even assuming that Plaintiff's November 21, 2007 appeal was improperly rejected as untimely, Plaintiff could have disputed this rejection by submitting a separate appeal.  The November 21, 2007 602 appeal form states: "If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for Processing within 15 days of receipt of response."  (Opp'n, Ex. J.)  Thus, if Plaintiff's appeal was actually rejected as untimely, the record shows that Plaintiff was offered the opportunity to resubmit and/or challenge this rejection.  However, there is no indication that he took these actions or was prevented from doing so.  Rather, Plaintiff filed the instant action without exhausting through the other levels of review.

In sum, Plaintiff failed to exhaust administrative remedies before filing suit with respect to his due process claim.[2]  Accordingly, the Court GRANTS Defendants' motion to dismiss the due process claim as unexhausted without prejudice to Plaintiff's refiling the

---

[2] Where a complaint presents exhausted and unexhausted claims, the Court may consider the exhausted claims to the extent the claims are not intertwined.  Lira v. Herrera, 427 F.3d 1164, 1170 (9th Cir. 2005).  Here, Plaintiff's excessive force claim is not intertwined with his due process claim.

1  claim after all available administrative remedies have been exhausted.[3]

2  **IV.    MOTION FOR SUMMARY JUDGMENT**

3        Defendants, in the alternative, argue that summary judgment is appropriate because

4  Plaintiff lacks evidence sufficient to raise a triable issue of fact with regard to the merits of

5  his claims.  Because Plaintiff's due process claim has already been dismissed for failure to

6  exhaust, the Court will only address Defendants' motion for summary judgment as to his

7  excessive force claim.

8        **A.    LEGAL STANDARD**

9        Federal Rule of Civil Procedure 56 provides that a party may move for summary

10  judgment on some or all of the claims or defenses presented in an action.  Fed. R. Civ. P.

11  56(a)(1).  "The court shall grant summary judgment if the movant shows that there is no

12  genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

13  law."  Id.; see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  The movant

14  bears the initial burden of demonstrating the basis for the motion and identifying the

15  portions of the pleadings, depositions, answers to interrogatories, affidavits, and admissions

16  on file that establish the absence of a triable issue of material fact.  Celotex Corp. v. Catrett,

17  477 U.S. 317, 323 (1986); Fed. R. Civ. P. 56(c)(1)(A) (requiring citation to "particular parts

18  of materials in the record").  If the moving party meets this initial burden, the burden then

19  shifts to the non-moving party to present specific facts showing that there is a genuine issue

20  for trial.  See Celotex, 477 U.S. at 324; Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,

21  475 U.S. 574, 586-87 (1986).

22        "On a motion for summary judgment, 'facts must be viewed in the light most

23  favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts.'"

24  _____

25  [3] To date, Defendant Ivey has not been served, and Plaintiff has not provided the
   Court with a current address where Defendant Ivey can be served.  However, the Court's
   analysis with respect to Plaintiff's failure to exhaust his due process claim applies with
26  equal force to Ivey. See Silverton v. Department of Treasury, 644 F.2d 1341, 1345 (9th Cir.
   1981) (holding district court "may properly on its own motion dismiss an action as to
27  defendants who have not moved to dismiss where such defendants are in a position similar
   to that of moving defendants or where claims against such defendants are integrally
28  related").

Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (quoting in part Scott v. Harris, 550 U.S. 372, 380 (2007)). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted."  Anderson, 477 U.S. at 248.  A factual dispute is genuine if it "properly can be resolved in favor of either party."  Id. at 250.  Accordingly, a genuine issue for trial exists if the non-movant presents evidence from which a reasonable jury, viewing the evidence in the light most favorable to that party, could resolve the material issue in his or her favor.  Id.  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  Id. at 249-50 (internal citations omitted).  Only admissible evidence may be considered in ruling on a motion for summary judgment.  Orr v. Bank of Am., 285 F.3d 764, 773 (9th Cir. 2002).

**B.   CONTENTIONS**

**1.   Heck v. Humphrey**

Defendants contend that Plaintiff's excessive force claim is legally barred under Heck.  In Heck, the Supreme Court held that:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.

512 U.S. at 486-87.   "Heck, in other words, says that if a criminal conviction arising out of the same facts stands and is fundamentally inconsistent with the unlawful behavior for which section 1983 damages are sought, the 1983 action must be dismissed."  Smithart v. Towery, 79 F.3d 951, 952 (9th Cir.1996).

The Ninth Circuit has made clear that Heck does not bar all excessive force actions.  "[A] § 1983 action is not barred under Heck unless it is clear from the record that its successful prosecution would necessarily imply or demonstrate that the plaintiff's earlier

conviction was invalid." Smith v. City of Hemet, 394 F.3d 689, 699 (9th Cir. 2005) (en banc). Here, Defendants fail to set forth the elements of the charge of which Plaintiff was found guilty, i.e., mutual combat under California Code of Regulations tit. 15, § 3005(c). Having failed to do so, Defendants, by extension, have failed to show that a decision in favor of Plaintiff on his excessive force claim would necessarily negate the validity of the prison's finding that Plaintiff engaged in mutual combat. Thus, based on the record presented, the Court cannot conclude that Plaintiff's excessive force claim is barred by Heck.

### 2.    Merits

A prisoner has the right to be free from cruel and unusual punishment, including physical abuse by guards. Whenever prison officials stand accused of using excessive physical force in violation of the Eighth Amendment, the core judicial inquiry is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. Hudson v. McMillian, 503 U.S. 1, 6-7 (1992). In determining whether the use of force was for the purpose of maintaining or restoring discipline, or for the malicious and sadistic purpose of causing harm, a court may evaluate the need for application of force, the relationship between that need and the amount of force used, the extent of any injury inflicted, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response. See Hudson, 503 U.S. at 7; see also Spain v. Procunier, 600 F.2d 189, 195 (9th Cir. 1979) (guards may use force only in proportion to need in each situation). If the force officers use is so disproportionate to that required that it suggests deliberate sadism, the use of force violates the Eighth Amendment. Whitley v. Albers, 475 U.S. 312, 322 (1986).

The parties have offered markedly different accounts of the altercation underlying Plaintiff's excessive force claim. Defendants contend that Button and Gonzalez used only the amount of force necessary to subdue Plaintiff, who was engaged in a mutual combat with inmate Green and had refused to follow orders that he stop fighting. In contrast, Plaintiff claims in both his verified complaint and opposition that: (1) he was initially

attacked by inmate Green while he was cutting another inmates hair with clippers; (2) he ran "several feet away" from inmate Green and turned to face him "with clippers in hand"; (3) he was not fighting with inmate Green; and (4) Defendants unnecessarily pepper sprayed him while he was "non-combative and still several feet away from [inmate Green]." (Opp'n at 1.) Plaintiff further claims that he was "never adequately treated for pepper spray and suffered on-going skin problems." (Id.) The record presented thus reveals that there is a genuine issue of material fact as to whether the force used was applied maliciously and sadistically to cause harm.

### 3.   Qualified Immunity

Defendants argue, in the alternative, that they are entitled to qualified immunity. The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). A court considering a claim of qualified immunity must determine whether the plaintiff has alleged the deprivation of an actual constitutional right and whether the right was clearly established, such that it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. See Pearson v. Callahan, 129 S. Ct. 808, 818 (2009).

As discussed above, the facts alleged by Plaintiff could show that Button and Gonzalez violated his constitutional rights to be free from the use of excessive force. The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that her conduct was unlawful in the situation confronted. Saucier v. Katz, 533 U.S. 194, 202 (2001). Here, Defendants do not argue that the constitutional rights at issue were not clearly established in 2007, and, specifically, the Court finds that Plaintiff's right to be free from the use of excessive force was clearly established at that time. Defendants contend that they are entitled to qualified immunity because their conduct of using pepper spray on Plaintiff was reasonable. Whether a prison official acted reasonably is a mixed question of law and fact: "It involves an objective test

of whether a reasonable official could have believed that his conduct was lawful in light of what he knew and the action he took.  If there are genuine issues of material fact in issue relating to the historical facts of what the official knew or what he did, it is clear that these are questions of fact for the jury to determine."  <u>Sinaloa Lake Owners Ass'n v. City of Simi Valley</u>, 70 F.3d 1095, 1099 (9th Cir. 1995).

When the facts underlying Plaintiff's excessive force claim are viewed in the light most favorable to him, a genuine issue of material fact exists as to the reasonableness of Button and Gonzalez's choice to pepper spray an inmate who was "non-combative."  In particular, even if Plaintiff was involved in a fight with inmate Green, Defendants have not presented evidence that shows why their choice to use pepper spray was reasonable, such as testimony regarding their personal experience or training in the use of various methods of force, or prison procedures concerning the appropriate elevation of force to break up a fight between two inmates.  The Court cannot find that Defendants acted objectively reasonably, as a matter of law.  Accordingly, qualified immunity is denied as to Button and Gonzalez on Plaintiff's excessive force claim.

## CONCLUSION

For the foregoing reasons,

IT IS HEREBY ORDERED THAT:

1.      Defendants' motion to dismiss is GRANTED with respect to Plaintiff's due process claim, which is DISMISSED WITHOUT PREJUDICE for failure to exhaust administrative remedies as to Defendants Button, Gonzalez, Vega, Deathriage, Showalter, Kessler and Ivey.  The motion to dismiss is DENIED in all other respects.

2.      Defendants' motion for summary judgment is DENIED as to Plaintiff's excessive force claim against Defendants Button and Gonzalez.

3.      The Northern District of California has established a Pro Se Prisoner Settlement Program.  Certain prisoner civil rights cases may be referred to a Magistrate Judge for a settlement conference.  The Court finds that a referral is in order as to the two theories of excessive force and deliberate indifference under Plaintiff's remaining Eighth

Amendment claim.  Thus, this case is REFERRED to Magistrate Judge Nandor Vadas for a settlement conference. The conference shall take place within sixty (60) days of the date of this Order, or as soon thereafter as is convenient to the Magistrate Judge's calendar. Magistrate Judge Vadas shall coordinate a time and date for the conference with all interested parties and/or their representatives and, within ten (10) days after the conclusion of the conference, file with the Court a report of the result of the conference.  The Clerk shall provide a copy of this Order to Magistrate Judge Vadas.

4.  If this matter does not settle, the parties shall abide by the following briefing schedule:

a.  No later than twenty-eight (28) days from the date Magistrate Judge Vadas files his Report informing the Court that this matter did not settle, Defendants Button and Gonzalez may file another motion for summary judgment if they believe the deliberate indifference claim can be resolved by summary judgment.  If Defendants Button and Gonzalez are of the opinion that it cannot be resolved by summary judgment, these Defendants shall so inform the Court as soon as possible, but no later than the date the motion for summary judgment is due.  All papers filed with the Court shall be promptly served on Plaintiff.

b.  Plaintiff's opposition to the motion for summary judgment shall be filed with the Court and served on Defendants Button and Gonzalez no later than twenty-eight (28) days after the date on which Defendants Button and Gonzalez file their motion.

c.  Defendants Button and Gonzalez shall file a reply brief no later than fourteen (14) days after the date Plaintiff's opposition is filed.

d.  The motion for summary judgment shall be deemed submitted as of the date the reply brief is due.

5.  If Defendants Button and Gonzalez do not file a motion for summary judgment by the twenty-eight-day deadline or if they file a notice that the matter cannot be resolved by summary judgment, then this case will proceed to trial.

6.  This Order terminates Docket no. 49.

1

IT IS SO ORDERED.

2

Dated: September 30, 2013

SAUNDRA BROWN ARMSTRONG
United States District Judge

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

G:\PRO-SE\SBA\CR.10\3775BennetGrantandDenyMTD&MSJ-v2.docx

24

25

26

27

28